IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ANNETTE DENISON, ELIZABETH DENISON, and MICHAEL DENISON, <br><br>*Plaintiffs*, <br><br>v. <br><br>BOB MANESS, <br><br>*Defendant.* | § § § § § § § § § § § § § <br><br>CIVIL NO. _____ |

# COMPLAINT

Plaintiffs Annette Denison, Elizabeth Denison, and Michael Denison complain of Defendant Bob Maness and respectfully show as follows:

## I.

## Parties

1. Annette Denison is an individual person and a citizen of the state of Georgia.

2. Elizabeth Denison is an individual person and a citizen of the state of Georgia.

3. Michael Denison is an individual person and a citizen of the state of Georgia.

4. Defendant Bob Maness is an individual person and a citizen of the state of Texas who may be served with process at 103 Village Green, Longview, Texas 75605.

## II.

## Jurisdiction

5. The Court has jurisdiction per 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different U.S. states, and the amount in controversy exceeds

$75,000, excluding interest and costs. Specifically, for diversity jurisdiction purposes, each of the Plaintiffs is a citizen of the state of Georgia; Defendant is a citizen of the state of Texas. As more fully stated below, the damages sought by this Complaint substantially exceed $75,000.

## III.

## Venue

6. Venue is proper in this district per 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because the property that is the subject of this action is situated in this district. Specifically, this action involves an executory contract to convey certain real property located in Longview, Gregg County, Texas.

## IV.

## Facts

7. Defendant Bob Maness and his wife, Jo Ruth Maness, are the owners of a residential dwelling in Longview, Texas located at 2005 W. Warwick Circle, Longview, Texas 75601 (the "**Property**").

8. In late December 2022, Defendant listed the Property for sale with a published listing price of $515,000. The listing agent was Aaron Alston of Coldwell Banker in Longview, Texas.

9. Prior to the events at issue in this case, Plaintiffs Annette Denison ("**Annette**") and her adult children Elizabeth Denison ("**Elizabeth**") and Michael Denison ("**Michael**") (collectively, Annette, Elizabeth, and Michael are sometimes referred to as the "**Denisons**") lived in the Atlanta, Georgia metropolitan area. The Denisons moved to Childress, Texas in

October 2021 and purchased a home there. In January 2023, the Denisons sold their home in Childress and decided to move to Longview.

10. The Denisons began looking for a house in Longview to use as their residence and found the Property listed for sale on an internet site. Annette sent an email to Defendant's real estate agent Alston, inquiring about the Property and whether the seller would consider owner-financing or a lease-purchase transaction. After speaking with Annette, Alston sent her an email with the "main deal points" proposed by Defendant. Those deal points were a lease-purchase structure at a sale price of $515,000, a "term" of "30 year amortization (to include taxes and insurance) with a 5 year maturity," and an interest rate of 7%.

11. Annette and Elizabeth traveled from Childress to Longview and were shown the Property on or about February 27, 2023, by Alston. After seeing the Property, the Denisons decided to move forward with the lease-purchase structure proposed by Defendant through his agent.

12. On or before March 1, 2023, Defendant and/or his agent Alston prepared a written lease agreement (the "**Lease**") that included as an "integral part" an option (the "**Purchase Option**") by which Defendant agreed to convey the Property to Annette. Defendant knew the Denisons intended to use the Property as their residence.

13. The Denisons and Defendant signed the Lease and the Purchase Option on or about March 1, 2023. True and correct copies of the Lease and Purchase Option are attached as Exhibit A and incorporated by reference.

14. The term of the Lease was five years, commencing on March 1, 2023.

15. Defendant agreed in the Purchase Option that Annette would have an exclusive option to purchase the Property at any time during the five-year term of the Lease. If and when the option were exercised by Annette, the purchase price for the Property would be the "unpaid principal balance" as shown on an "Amortization Schedule" attached to the Purchase Option. In return for payment of the "unpaid principal balance," Defendant would convey the Property to Annette.

16. The Purchase Option required Annette, prior to exercising the option, to pay the property taxes and homeowner insurance premiums for the Property by making escrow payments to Defendant. The Lease also required the Denisons to also have personal property/renter's insurance.

17. The Lease required payment to Defendant of a "Deposit" of $50,000 that was characterized by the Lease as a "non-refundable fee." The $50,000 deposit was actually a down payment for the purchase of the Property as shown by the Amortization Schedule attached to the Purchase Option. That schedule shows the $50,000 "Down Payment" was credited to the $515,000 "Sale Price" for the Property. This Sale Price was the same as the price for which the Property had been advertised for sale by Defendant. After deducting the Down Payment from the Sale Price, the "unpaid principal balance" of $465,000 was then "amortized" at 7.00% interest over a "loan period" of 30 years, with a "loan start date" of March 1, 2023, the same date the Lease term commenced.

18. Alternatively, the $50,000 deposit was a security deposit subject to the provisions of Chapter 92 of the Texas Property Code.

19. The Denisons paid Defendant the "First Month's Rent" of $3,368.99 and the $50,000 deposit, for a total payment of $53,368.99.

20. The Denisons moved from Childress to Longview and picked up the keys to the Property in early March 2023.

21. Texas law required Defendant to provide to the Denisons, before the Lease and Purchase Option were signed, the following:

- (a) a survey completed within the past year or plat of a current survey of the Property;

- (b) a legible copy of any document describing any encumbrance or other claim, including a restrictive covenant or easement, affecting title to the Property; and

- (c) a written notice, attached to the contract, informing the Denisons of the condition of the Property, signed by the parties and containing the information specified in Texas Property Code § 5.069(a)(3).

TEX. PROP. CODE § 5.069(a). Defendant failed to provide any of this information to the Denisons.

22. Per Section 5.069(d) of the Texas Property Code, Defendant's failure to provide the information required by § 5.069(a) was a false, misleading, or deceptive act or practice within the meaning of the Texas Deceptive Trade Practices-Consumer Protection Act (the "**DTPA**"), TEX. BUS. & COMM. CODE § 17.46. Defendant's violation of the DTPA entitled the Denisons to cancel and rescind the Lease and Purchase Option and receive a full refund of all payments made to Defendant. TEX. PROP. CODE § 5.069(d).

23. Before the Lease and Purchase Option were signed, Texas law also required Defendant to provide the Denisons the following information:

- (a) a tax certificate from the collector for each taxing unit that collects taxes due on the property as provided by Texas Tax Code § 31.08; and

- (b) a legible copy of any insurance policy, binder, or other evidence relating to the property that indicates:

    i. the name of the insurer and the insured;

      ii. a description of the property insured; and

      iii. the amount for which the property is insured.

TEX. PROP. CODE § 5.070. Defendant failed to provide this information.

24. Per Section 5.070(b) of the Texas Property Code, Defendant's failure to provide the information required by § 5.070 was also a violation of the DTPA, entitling the Denisons to cancel and rescind the Lease and Purchase Option and to receive a full refund of all payments to Defendant.

25. Texas law gives purchasers of property under executory contracts certain cancellation rights and requires sellers to provide notice of those rights to purchasers. Specifically, Section 5.074 of the Texas Property Code required, in immediate proximity to the space in the Lease Agreement and Purchase Option for the Denisons' signatures, a statement printed in 14-point boldface type or 14-point uppercase typewritten letters that reads substantially similar to the following:

> **YOU, THE PURCHASER, MAY CANCEL THIS CONTRACT AT ANY TIME DURING THE NEXT TWO WEEKS. THE DEADLINE FOR CANCELING THE CONTRACT IS (date). THE ATTACHED NOTICE OF CANCELLATION EXPLAINS THIS RIGHT.**

Neither the Lease nor the Purchase Option included this statement required by Texas law.

26. Section 5.074 of the Texas Property Code also required Defendant to provide a separate written cancellation notice to the Denisons at the time the Lease and Purchase Option were signed. That notice had to be printed in 14-point boldface type or 14-point uppercase typewritten letters and read substantially similar to the form set out in the statute. Defendant failed to provide this required notice, further violating the Property Code.

27. Although Defendant is not the sole owner of the Property, he did not include his co-owner (Jo Ruth Maness) in the Lease or the Purchase Option. This made the Purchase

6

Option unenforceable as to Jo Ruth Maness and was another false, misleading, or deceptive act by Defendant. It was also a violation of Texas Property Code § 5.069(3), which requires an affirmative statement that no one except the seller owns or claims to own the Property or have an interest therein. The failure to disclose the other owner of the Property was a false, misleading, or deceptive act or practice that entitled the Denisons to cancel and rescind the Lease and the Property Option.

28. The Denisons discovered after moving into the Property that Defendant had failed to comply with the disclosure requirements of the Texas Property Code.

29. During the time the Denisons occupied the Property, they incurred expenses that inured to the benefit of Defendant as owner of the Property. Those expenses included homeowner insurance premiums and repairs to the Property.

30. The Denisons decided to move back to Georgia and did so in late August 2023.

31. The Denisons surrendered possession of the Property to Defendant on August 28, 2023.

32. By letter dated August 28, 2023, the Denisons gave Defendant a written statement of their forwarding address for the purpose of refunding the security deposit.

33. The Denisons cancelled and rescinded the Lease and the Purchase Option by sending a Notice of Rescission and Cancellation to Defendant on August 29, 2023.

34. All conditions precedent to Plaintiffs' right of recovery have been performed or have occurred.

## V.

## Count 1 – Unlawful Executory Contract for Conveyance

35.     Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 34 above.

36.     The Purchase Option was an option to purchase real property that was combined or executed concurrently with a residential lease agreement and, together with the Lease, was an executory contract for conveyance of real property under Texas law. TEX. PROP. CODE § 5.062(a).

37.     The Denisons are among the class of persons for whose benefit the Texas Legislature enacted the provisions of the Texas Property Code concerning executory contracts for conveyance of real property.

38.     The option granted to Annette by the Purchase Option could be exercised at any time before expiration of the 5-year term of the Lease. The Purchase Option did not provide for delivery of a deed from Defendant within 180 days of the date of the executory contract.

39.     Defendant was required by the Texas Property Code to make certain disclosures to the Denisons before the executory contract was signed but failed to do so. Specifically, as more fully alleged above, Defendant violated Sections 5.069, 5.070, and 5.074 of the Texas Property Code by failing to make required disclosures before the Denisons signed the Lease and Purchase Option.

40.     Per Texas Property Code §§ 5.069, 5.070, or 5.074, the Denisons elected to cancel and rescind the Lease and Purchase Agreement and sent a Notice of Rescission and Cancellation on August 29, 2023.

41. Per Texas Property Code §§ 5.069, 5.070, or 5.074, the Denisons are entitled to recover from Defendant a full refund of all payments made to Defendant, including the $50,000 Down Payment and the expenses paid by the Denisons for the benefit of Defendant. The Denisons are entitled to judgment against Defendant in the amount of all payments made by the Denisons to Defendant or for his benefit, an amount that exceeds $50,000.

## VI.

## Count 2 – Deceptive Trade Practices

42. Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 41 above.

43. The Denisons are consumers under the DTPA because they sought or acquired goods or services by purchase or lease. Specifically, the Denisons sought to purchase or lease a house for residential purposes and in fact entered into the Lease and Purchase Option.

44. Defendant is an individual who can be sued under the DTPA.

45. Defendant violated the DTPA by engaging in false, misleading, or deceptive acts or practices that the Denisons relied on to their detriment. Specifically, Defendant was required by the Texas Property Code to make certain disclosures to the Denisons before the Lease and Purchase Option were signed but failed to do so. In particular, Defendant violated Sections 5.069, 5.070, and 5.074 of the Texas Property Code by failing to make statutorily required disclosures before the Denisons signed the Lease and Purchase Option. Each of these Texas statutes provides that failure by a seller such as Defendant to make the required disclosures is a false, misleading, or deceptive act or practice within the meaning of Section 17.46 of the DTPA. Defendant also violated Section 17.46 of the DTPA by:

- causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

- representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

- falsely representing that an agreement confers or involves rights, remedies, or obligations which it did not have or involve, or which are prohibited by law; and/or

- failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

46. Plaintiffs gave Defendant 60 days' written notice prior to filing this suit as required by Section 17.505(a) of the DTPA.

47. Defendant's failures to comply with the Texas Property Code and other acts or omissions, as described above, were an unconscionable action or course of action and further violated the DTPA.

48. To the extent the $50,000 deposit the Denisons gave Defendant was not a down payment for the executory contract but was a "non-refundable fee" for a residential lease, that fee was unconscionable.

49. The Denisons relied to their detriment on Defendant's false, misleading, or deceptive acts or practices and unconscionable acts.

50. Defendant's wrongful conduct was a producing cause of injury to the Denisons. The economic damages suffered by the Denisons as a result of Defendant's deceptive acts or practices and unconscionable acts include the $50,000 Down Payment and other payments made to Defendant or for his benefit. The Denisons are entitled to judgment against Defendant for their economic damages in an amount that exceeds $50,000.

51. Alternatively, the Denisons are entitled per Section 17.50(b)(3) of the DTPA to orders necessary to restore to the Denisons any money or property acquired by Defendant in violation of the DTPA.

52. The conduct of Defendant described above was committed knowingly and intentionally. Per § 17.50(b)(1) of the DTPA, the Denisons are entitled to recover from Defendant additional damages of three times the amount of economic damages. In this case the additional damages the Denisons are entitled to recover from Defendant are at least $150,000.

## Count 3 – Alternative Claim for Unlawful Retention of a Residential Lease Security Deposit

53. Pleading in the alternative, Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 52 above.

54. As part of the transaction described above, the Denisons paid Defendant a deposit of $50,000 before leasing the Property and moving into it as their residence. To the extent this deposit was not a down payment for an executory contract for conveyance, it was an advance of money, other than a rental application deposit or an advance payment of rent, intended primarily to secure performance under a lease of a dwelling entered into by Defendant, as a landlord, and the Denisons, as tenants, and was a "security deposit" as defined by Section 92.102 of the Texas Property Code.

55. The Denisons surrendered the Property to Defendant on August 28, 2023. For the purpose of refunding the deposit, the Denisons gave Defendant a written statement of their forwarding address on August 28, 2023.

56. Counsel for the Denisons sent a letter to Defendant on August 29, 2023, requesting return of the deposit.

57. Section 92.103 of the Texas Property Code requires landlords to refund a security deposit to a tenant on or before the thirtieth day after the date the tenant surrenders the premises. Although more than thirty days have passed since Plaintiffs surrendered the Property and provided their forwarding address as required by Section 92.107 of the Property Code, Defendant has failed and refused to return the deposit.

58. Plaintiffs were damaged by Defendant's refusal to return the deposit and are entitled to judgment against Defendant for the $50,000 wrongfully retained by Defendant.

## Count 4 – Attorney's Fees and Costs

59. Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 58 above.

60. As a result of Defendant's violation of the Texas Property Code and his false, misleading, or deceptive and unconscionable acts or practices, the Denisons were forced to retain an attorney and incur attorney's fees.

61. The Denisons are entitled to recover reasonable and necessary attorney fees for prosecuting this suit per Section 17.50(d) of the DTPA.

62. Alternatively, the Denisons are entitled to recover reasonable attorney's fees under Texas Property Code § 92,109(a).

63. The Denisons are further entitled to recover court costs.

## Prayer

Plaintiffs Annette Denison, Elizabeth Denison, and Michael Denison respectfully request judgment against Defendant Bob Maness for the following:

    a. Economic damages of at least $50,000;

    b. Additional damages under the DTPA of at least $150,000;

    c. Prejudgment and post-judgment interest;

    d. Attorney's fees;

    e. Costs of suit; and

    f. All other relief the Court deems appropriate.

Respectfully submitted,

*/s/ Steven L. Russell*
Steven L. Russell
Texas Bar No. 17437040
srussell@rwtrial.com

LILLARD WRIGHT SZYGENDA
RUSSELL WISE PLLC
13760 Noel Road, Suite 930
Dallas, Texas 75240
(972) 267-8400
(972) 267-8401 (fax)

Attorney for Plaintiffs